Argued February 4, affirmed February 18, 1919.

## ULBRAND v. SMITH.

(178 Pac. 597.)

**Appeal and Error—Disposition—Affirmance—Evidence.**

1. Under Article VII, Section 3, of the Constitution, where Supreme Court cannot affirmatively say there is no evidence to support verdict, it must affirm.

Appeal and Error—Review—Verdict on Conflicting Evidence.

2.  Where evidence for plaintiff was purely circumstantial, though evidence for defendant vigorously disputed plaintiff's claim, it was for jury to decide facts, and not for Supreme Court.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.

D. B. Ulbrand was severely injured while working for the Louis A. Hicks Company, a corporation. Ulbrand gave to J. E. Bennett a written power of attorney "to settle" his "claim for damages against" the corporation.  The Louis A. Hicks Company held an employers' liability policy issued by the Massachusetts Bonding and Insurance Company.  Palmer Fales, an attorney of Portland, represented the insurance company.  Bennett entered into negotiations for a settlement with Palmer Fales.  The negotiations terminated in an oral agreement to settle for $3,300. Bennett caused Ulbrand to sign a release which recites that the payment of $3,300 is the consideration.

The agreement to settle was carried out on March 30, 1914, by Bennett delivering the release to Palmer Fales in the latter's office and by Fales giving to Bennett a check for $500 signed by the Louis A. Hicks Company and a draft for $2,800 drawn on the insurance company.  The check and the draft were made payable to Ulbrand.

The defendant, Alan Welch Smith, is a physician and surgeon with offices in Portland.  The injuries received by Ulbrand necessitated an operation.  Dr. Smith performed the operation and attended Ulbrand for a period of about two and one-half months while Ulbrand was in the hospital.

After receiving the check and draft in Fales' office Bennett went to Smith's office.  Assuming to act as Ulbrand's agent Bennett delivered the draft to Smith

after having first endorsed it so that Smith could cash it. Smith then drew three checks aggregating $2,300 against his own personal account: One to D. B. Ulbrand for $2,100; one to the hospital for $161.15 and one to Bennett for $38.85. These three checks were delivered to Bennett and he cashed the check which had been made payable to his order and delivered the other two checks to their respective payees. Bennett paid $10 in cash to the Pernot Laboratories. The $500 check given by the Louis A. Hicks Company was also cashed by Bennett.

Several months after the settlement D. B. Ulbrand sued and obtained a judgment against J. E. Bennett and Alan Welch Smith for $1,200. Smith appealed and as against him the judgment was reversed and the cause was remanded for a new trial. *Ulbrand* v. *Bennett,* 83 Or. 557 (163 Pac. 445). After the defendant Smith filed an amended answer the cause was tried a second time and terminated in a verdict and judgment against Smith in the sum of $528.85. The defendant again appealed.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Frank S. Grant* and *Mr. Frank J. Lonergan,* with an oral argument by *Mr. Grant.*

For respondent there was a brief and an oral argument by *Mr. Wilson T. Hume.*

HARRIS, J.—The written power of attorney merely authorized Bennett to settle the claim for damages; it did not empower Bennett to pay Ulbrand's bills. The defendant asserts and the plaintiff denies that both before and after the execution of the written power of attorney Ulbrand orally directed Bennett to pay

Dr. Smith and also to pay the other expenses incurred in caring for Ulbrand. Dr. Smith says that he charged $500 for his professional services and that Ulbrand was informed of the amount of the bill. All the evidence upon the subject is to the effect that $500 was a reasonable charge for the services rendered by Dr. Smith. The plaintiff does not dispute the charge made by the hospital, nor does he question the correctness of the bill of the Pernot Laboratories. It is conceded that the draft for $2,800 and the check for $500, aggregating $3,300, were delivered to Bennett for the use of Ulbrand; and it is admitted that Ulbrand received only the sum of $2,100. The complaint is drawn upon the theory that the defendant and Bennett participated in the distribution of the remaining $1,200 and that Smith is liable for the whole sum of $1,200 because neither he nor Bennett had authority to use, appropriate or pay out any part of the money.

Bennett testified that Ulbrand wanted to get the money on his claim as soon as possible; that the draft was drawn on some "concern" in Boston and, since Bennett had no bank account, the bank would not have cashed the draft for him but would have taken it for collection only and this would have caused a delay of ten or more days in getting the money; that he explained the situation to Smith and requested the latter to accept and bank the draft and that Smith did, as a matter of accommodation, receive and bank the draft; that out of the $2,800 represented by the draft Smith retained $500 in payment of his bill, wrote one check for $2,100 for Ulbrand, one for $161.15 for the hospital and gave one to Bennett for $38.85, the remainder of the amount represented by the draft. Bennett says that he charged $500 for the services performed by him in effecting a settlement and on that account re-

tained the $500 represented by the Louis A. Hicks Company check. Smith testified that he had no knowledge of the check given by the Louis A. Hicks Company.

The answer filed by the defendant denies the charge made by the complaint and then tells the story as the defendant and Bennett related it to the jury. The reply traverses the further and separate defense relied upon by the defendant.

The plaintiff did not receive any part of the $500 paid by the Louis A. Hicks Company, for he received only $2,100 of the $2,800 paid by the insurance company. The plaintiff sued for $1,200 on the theory that he was entitled to recover the remaining $700 of the amount paid by the insurance company plus $500, the sum paid by the Louis A. Hicks Company.

1, 2. The defendant presents this appeal on the assumption that by their verdict the jurors first allowed the defendant $500 for his professional services and approved the bills of the hospital and the Pernot Laboratories and then charged the defendant with and held him liable for $500, the amount of the Louis A. Hicks Company check, plus $28.85 received by Bennett out of the draft. The defendant insists that there is an utter want of evidence to support the verdict and especially that part of the verdict which makes him liable for the Louis A. Hicks Company check. The plaintiff, however, points to many circumstances which he contends, when taken together, warranted the jury in finding that the defendant participated with Bennett in disposing of the Louis A. Hicks Company check. Manifestly that part of the verdict which relates to the $28.85 received by Bennett out of the draft cannot be disturbed. It would serve no useful purpose to give a detailed statement of all the evidence;

but it is enough to say that after reading and rereading and carefully considering the record we cannot "affirmatively say there is no evidence to support the verdict": State Const., Art. VII, § 3. While the evidence for the plaintiff, so far as it concerns the Louis A. Hicks Company check, was purely circumstantial and although the evidence offered in behalf of the defendant vigorously disputed the claim made by the plaintiff, yet it was for the jury to decide the facts and it is not for us to say whether we do or do not agree with the conclusion reached by the jury. The judgment is therefore affirmed.        AFFIRMED.

McBRIDE, C. J., and BURNETT and BENSON, JJ., concur.